BALTIMORE & OHIO RY v. WILLIAM REED.

ASSAULT BY CONDUCTOR UPON A PASSENGER RENDERS CARRIER LIABLE FOR PUNITIVE DAMAGES.

A conductor of a railway train is required by his duty to the railway company employing him, to protect passengers and carry them to their destination and as an aid to the performance of this duty the state has by statute, Secs. 3433, 3434 Rev. Stat., invested him with special police powers; hence, an assault by a conductor upon a passenger in his train is governed by a different rule than injuries inflicted by servants acting in other capacities, and where the conduct of the passenger assaulted is peaceful and he is not violating any rules of the carrier, the conductor will be deemed to have acted within the scope of his authority for which punitive as well as actual damages may be assessed against the company.

[Syllabus approved by the court.] .

ERROR to Richland common pleas court.

**Cummings, McBride & Wolfe** and **F. A. Durban**, for plaintiff in error.

**Douglass & Mengert**, for defendant in error.

DONAHUE, J.

This proceeding in error is brought to reverse the judgment of the common pleas court in an action brought by William Reed against the Baltimore & Ohio Railway Company for damages inflicted upon his person by the conductor of one of the railway company's trains, while he was *en route* as passenger on said train from one station to another, and for delaying him in his journey and compelling him to leave his car against his will before the termination of his journey. The trial in the common pleas court resulted in a verdict for Reed; the motion for new trial was overruled and judgment entered upon the verdict.

The plaintiff in error contends that there was error in the admission of evidence of William Reed as to what occurred at Chicago Junction, but looking to the petition we find that it not only charges damages for the injuries received in the assault which he claims the conductor made upon him, but also for being compelled to leave the train at that point. So that we think that evidence was pertinent to the issue and was properly admitted.

It is also contended that there was error committed by the trial

court in permitting the plaintiff's wife to testify as to what plaintiff was going to do with the pocketbook. Turning to page 45 of the record, we find the following:

"Q. What was he going to do with it? A. Why, give it to the conductor."

To which question defendant objected and moved that the answer be excluded, which objection and motion the court sustained and instructed the jury not to consider the answer.

"Q. Do you know where he went to putting the pocketbook in his pocket? A. He told me he was going—

"Court: You must not testify to anything he may have said to you. The jury will not consider the answer."

It is apparent that this evidence was not admitted and that this contention of the plaintiff in error is not sustained by the record.

The next contention, and a more serious one, is that the charge of the court is erroneous. It is claimed that it violates the doctrines announced in *Baltimore & O. Ry.* v. *Lockwood,* 72 Ohio St. 586 [74 N. E. Rep. 1071], but with that contention we do not agree. In fact, we think the only serious question raised upon this charge is in reference to that part of it wherein the court charges as follows:

"An obligation rested on the defendant on the twenty-fourth day of March, 1906, being then and there a common carrier of passengers, to carry the plaintiff, if he was then a passenger on said train, safely and promptly from the city of Mansfield, Ohio, to his destination on this road, and if the defendant entrusted this duty to servants, the law holds the defendant responsible for the manner in which it executes it. A carrier is bound to protect its passengers from violence from its own servants in charge of its trains while in transit."

If that portion of the charge is correct, then there was no error in refusing the special request of the plaintiff in error nor is the charge open to the other objection raised against it. We are of the opinion that a different rule applies to assaults by a conductor in charge of a train upon passengers in transit upon their train, than in the ordinary case of injuries inflicted by servants in other capacities. That is to say, as a matter of law, it is a part of the duty of that conductor, who is a servant of the company, to carry out the contract made by the company with the passenger to carry the passenger to his destination and to protect him as far as possible from injuries, either from accidents or assaults from other passengers or from servants upon the train.

In Voorhies, Pers. Inj. Cas. Sec. 100, p. 194, this doctrine is announced:

"It is among the implied provisions of the contract between the passenger and the railroad company that the latter has employed suitable servants to run its trains, and that passengers shall receive proper treatment from them, and a violation of this implied duty and contract is actionable in favor of the person injured by this breach, although the act of the servant was willful and malicious, as for malicious assault upon a passenger, or by any of the train hands, whether in the line of his employment or not. The duty of a carrier towards a passenger is contractual, and among the implied obligations is that of protecting the passenger from insults or assaults from other passengers or by their own servants."

In support of that doctrine the author cites a great many authorities and in the foot notes copies very largely from those authorities and, unless the law in this respect be different in Ohio than in other states, we think the doctrine is correctly stated in the text.

The legislature of this state seems to have recognized this duty of the railroad company and in aid and furtherance of the company in performing that duty, have conferred police powers upon the conductor. Section 3433 Rev. Stat. invests conductors of steam and interurban railroad companies with powers, duties and responsibilities of police officers while on duty on their train and authorizes such conductors to wear the badge of a special policeman. Section 3434 authorizes them to eject any passenger guilty of disorderly conduct or of any obscene language, etc.

We think the provisions of these statutes were not solely for the purpose of enabling the railroad companies to protect their properties, but also for the purpose of enabling them to protect passengers from assaults of fellow passengers or from the servants of the road, and in other respects to preserve and secure the peace, safety and convenience of passengers. And if a conductor, while in charge of his train, makes an assault upon a passenger who is then in the peace of the state and not violating any rule of the company, as a matter of law, he would be held to be acting within the scope of his authority and the master would be liable.

It is also insisted that punitive damages cannot be allowed in this character of cases, and that the charge in that behalf is erroneous. In the case of *Western Union Tel. Co.* v. *Smith*, 64 Ohio St. 106, 117 [59 N. E. Rep. 890], the court quotes with approval the following:

"That 'a corporation may be subjected to exemplary or punitive damages for tortious acts of its agents and servants done within the

Richland County.

scope of their employment, in all cases where natural persons, acting for themselves, if guilty of like tortious acts, would be liable for such tortious damages.' "

We are of the opinion that there is no prejudicial error apparent upon this record and, therefore, the judgment of the common pleas court is affirmed with costs but without penalty. Exceptions of plaintiff in error noted and case remanded for execution.

**Taggart** and **Voorhees, JJ.,** concur.